remotest degree. When the word used is "heirs" or "heirs of the body," then we go to the statute to determine who are the heirs. The words "issue" is not refined by the statute and the general meaning governs, and the great-grandchildren are as truly issue as the grandchildren. To say "issue" means "immediate issue" is to add words to the will and exclude from the class those who are not excluded by the will. In this case we cannot construe the word "issue" to mean "heirs of the body" and give the grandchildren a share, unless their parents are dead. The words "heirs of the body" would necessarily be words of limitation, and not of purchase. "No one is an heir of the living." It is said that the intention must govern. That is true, but the expression means intention of the will, and not the intetion of the testatrix. When well known techical words are used, they must be give their technical meaning, unless the will itself shows a different meaning. There is not a proposition above stated that needs the citation of authority. Why deprive these great-grandchildren of that share given to them by this will? Could the testatrix have intended to provide for grandchildren? The love of grandparents for their grandchildren is well known. Has the love exhausted itself with grandchildren? It may be that these great-grandchildren need the money now more than they ever will again. That is speculation; but whether they do or not, in my judgment the law gives it to them.

For these reasons I dissent.

---

## 11787

### SAFETY BUILDING & LOAN COMPANY v. LYLES

(128 S. E., 724)

1. DEDICATION—DEDICATION MUST BE FOR USE OF PUBLIC AT LARGE, AND THERE CAN BE NO DEDICATION FOR PRIVATE USES.—Dedication must be for the use of the public at large, and there can be no dedication to private uses, nor for a purpose bearing an interest or profit in the land as distinguished from general public uses.

2. DEDICATION—MUST BE MADE BY OWNER OF FEE OR WITH HIS CON-
SENT.—Dedication must be made by owner of fee or with his con-
sent.

3. DEDICATION—MUST BE MADE EXCLUSIVELY TO PUBLIC USE, AND CAN-
NOT BE LIMITED TO SUCH USER AS OWNER MAY DESIRE.—Dedication
must be made to public use exclusively, and not merely to the use
of the public in connection with a user by owners in such measure
as they may desire.

4. DEDICATION—TOWN, INCORPORATED AFTER PLAT DESCRIBING A DRIVE-
WAY, CANNOT BE SAID TO HAVE ACCEPTED GIFT OF DRIVEWAY.—
Where town was incorporated two years after plat was made,
which delineated a square within which a circular driveway con-
necting two streets was described, and thereafter collected taxes
on property within driveway, town *held* not to have accepted gift
of driveway.

5. DEDICATION—DRIVEWAY, PLATTED BEFORE INCORPORATION OF TOWN
WAS ABANDONED AND TAXES LEVIED AGAINST LOTS EMBRACED WITHIN
ITS AREA, HELD NOT TO HAVE BEEN DEDICATED.—Where plat, de-
lineating a square within which a circular driveway was described,
was laid out prior to incorporation of town, and driveway was
never graded, and was subsequently eliminated by other plats, and
taxes were levied on lots which were originally embraced within
driveway, *held* that there was no dedication of such driveway to
public use.

6. EASEMENTS—EASEMENTS ARE DIVIDED INTO EASEMENTS APPURTE-
NANT AND EASEMENTS IN GROSS.—Easements are broadly divided
into easements appurtenant and easements in gross.

7. EASEMENTS—NATURE OF "WAY APPENDANT OR APPURTENANT" AND
"WAY IN GROSS" STATED.—"Ways are appendant or appurtenant"
when they are incident to an estate, one terminus being on the
land of the party claiming it, and they must inhere in the land,
concern the premises, and be essentially necessary to their en-
joyment; while "way in gross" must be a personal right, not as-
signable nor inheritable.

8. EASEMENTS—EASEMENT IN DRIVEWAY HELD ONE IN GROSS, AND
DIED WITH OWNER.—Where deed did not convey any interest in
or right to a circular driveway which had been platted, but not
accepted by public, and grantee was afforded egress and ingress
by use of other streets, and grantee's claim to easement in such
driveway was based on oral representations, *held* that easement
in driveway was one in gross, and died with grantee.

Before PEURIFOY, J., Richland, April, 1922. Affirmed.
Action by the Safety Building & Loan Company against

Preston E. Lyles and others.    From judgment for plaintiff, the named defendant appeals.

The decree of the Circuit Court follows:

The plaintiff entered into a contract with the defendant Preston E. Lyles for the sale of the lots of land described in the complaint.    The defendant, Lyles, has refused to comply on his part, and undertakes to justify his refusal on the ground that the property is incumbered with an easement in favor of the heirs, executors, administrators, and assigns of Mrs. Julia C. Marshall, deceased, the town of Eau Claire, and the public, or in favor of one or more of them.    This action resulted, and plaintiff now seeks to have the Court declare the lots to be free of any incumbrance of that charter.    The legatees, devisees, and heirs-at-law of Mrs. Marshall are parties.    The town of Eau Claire was also joined. Lucile Spigner and Ollie deLaunay, granddaughters of Mrs. Marshall, filed answers, in which they allege that the real estate of which their mother died seized and possessed was sold by the Probate Court in aid of assets, and that they "no longer have any interest in said 'circle' of a substantial nature of which they are aware," but submit their rights to the protection of the Court.    The defendants May Belle Hatchel and Agnes W. Tompkins, daughters of Mrs. Marshall, and the defendant the town of Eau Claire made default. The answer of the defendant, Lyles, seems to admit all of the circumstances alleged in the complaint, but denies some of the conclusions stated therein, particularly these claiming the easement or right acquired by Mrs. Marshall was merely one in gross, and that there had been no dedication.

"The essence of dedication is that it shall be for the use of the public at large.  * * *·  Properly speaking, there can be no dedication to private uses, nor for a purpose bearing an interest or profit in the land, as distinguished from general public uses."  8 R. C. L. p. 882.

"It is essential to a valid dedication that it be made by the owner of the fee, or at least with his consent." 8 R. C. L. p. 885.

"There is no such thing as a dedication between the owner and individuals. The public must be a party to every dedication. * * * In short, the dedication must be made to the use of the public exclusively, and not merely to the use of the public in connection with a user by the owners in such measure as they may desire." 8 R. C. L. pp. 888, 889.

The testimony of the witnesses in the former cases in which the elimination of the "circle" was involved, including Mrs. Marshall, was that it was represented to them that a tourist hotel, church, or other building of this kind would be erected on the "inner circle," and none of them claimed that the lot and building was to be given to the free use of the public. The decree in one of the cases in which this very same "circle" came up for consideration contains this statement. "My own conclusion is that the driveways and walkways indicated upon the square were intended more for ornamental purposes in connection with some hotel or other *quasi* public building."

The Supreme Court in the *Diseker Case* (86 S. C., 283; 68 S. E., 529), in speaking of its judgment in the *Marshall Case* (73 S. C., 241; 53 S. E., 417), said: "Even if the map was not accepted or adopted by the defendant company, and even if the 'circle' was not dedicated, so as to confer rights that could be enforced by the public, nevertheless, if the company represented to the plaintiff that the 'circle' would be kept open, and thereby induced the plaintiff to purchase her lots, such representation would be binding upon the defendants."

The Niernsee & La Motte plat showing the "circle" is dated 1897. The town of Eau Claire was not incorporated until September 30, 1899. So it cannot be said that the town of Eau Claire accepted the gift. On the contrary, it appears that the town of Eau Claire has been levying and collecting taxes for many years on the lots embraced within the area called the "circle," and espe-

cially is this true as to plaintiff's house and lot; and the State and County has likewise levied and collected taxes. The "circle" was never opened up and graded out. It was in fact a mere representation on paper. After the plat was changed so as to cause Fifth Avenue and Second Street to intersect at right angles, the streets were graded out and since that time the town of Eau Claire has worked, maintained, and exercised authority over them as streets of that municipality.

Under the circumstances stated above, manifestly there was no dedication; and the town of Eau Claire and the public cannot require an adherence to the Niernsee & La Motte plat and that the "circle" be kept open.

Next, the right acquired by Mrs. Marshall will be considered.

"Easements are broadly divided into two classes: Easements appurtenant and easements in gross."

9 R. C. L., 737. In *Fisher v. Fair*, 34 S. C., 209; 13 S. E., 472 (14 L. R. A., 333), (quoting from Washburn) the Court said: "Ways are said to be appendant or appurtenant when they are incident to an estate, one terminus being on the land of the party claiming. They must inhere in the land, concern the premises, and be essentially necessary to their enjoyment." Also, "A man may have a way in gross over another's land, but it must from its nature be a personal right, not assignable nor inheritable, nor can it be made so by any terms in the grant."

The lots conveyed to Mrs. Marshall have always had sufficient frontage on streets to afford her the freest ingress and egress. For instance, the lot first described in the deed to her fronts on Sixth Avenue 289 "6," on Fifth Avenue 58 "6," and on Second Street 345. She can travel Fifth Avenue and Second Street, to and fro, by the new plan as well as by the old one, the only difference being that by the new way she would travel on streets intersecting at right angles and on the old she would travel by way of the

"circle." Therefore the right claimed by Mrs. Marshall was not essentially necessary to the enjoyment of her premises. The operation of a tourist hotel on the "inner circle" certainly would not add to her comfort and to the enjoyment by her of her lot. It would have a tendency to diminish her comfort and her free use of her lot.

The deed to Mrs. Marshall does not convey an interest in or right over the circle. Her claims were based upon alleged oral representations. The circle, at most, was but a mere boundary, and did not at any point enter into and upon Mrs. Marshall's lot.

Measured by these standards, the right acquired by Mrs. Marshall under the judgment in her case against the railway company was an easement in gross, and died with her.

It is therefore ordered, adjudged, and decreed that the title of the plaintiff to the lots of land described in the complaint is free from any claim of title, appurtenance, or right of any kind in Mrs. Julia C. Marshall, her heirs, executors, administrators, and assigns, and free of any easement or right in the town of Eau Claire, and that no rights, appurtenances, or easements of any kind outstand in favor of · any adjacent or neighboring property against the property in question.

*Mr. William H. Lyles,* for appellant, cites: *Title to land in this suit clouded:* 86 S. C., 281; 73 S. C., 241.

*Messrs. R. Beverley Herbert* and *Edward L. Craig,* for respondent, cite: *Determination of nature of easement:* 91 S. C., 129. *Easements appurtenant and easements in gross:* 21 S. C., 223; 24 S. C., 479; 27 S. C., 559; 34 S. C., 203; 91 S. C., 129; 23 Ohio St. 617; 43 Ind., 30; Washb. Easements Chap. 1, par. 2 and page 217. *Easement of necessity:* 53 S. C., 503; 2 McC., 448. *Easement abandoned:* 89 S. C., 395. *Easement barred:* 65 S. C., 524; 6 Rich., 298.

June 22, 1925.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

For the reasons therein stated, the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES WATTS, COTHRAN and MARION and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.

---

### 11791

#### STATE v. DOZIER

(128 S. E., 726)

INTOXICATING LIQUORS—CONVICTION OF STORING AND POSSESSING HELD SUSTAINED BY EVIDENCE.—Evidence *held* sufficient to sustain conviction of storing and possessing intoxicating liquor.

Before ARTHUR GASTON, SPECIAL JUDGE, York, 1924. Affirmed.

O. B. Dozier was convicted of storing and possessing intoxicating liquor and he appeals.

*Messrs. Dunlap & Dunlap,* for appellant, cite: *Prosecution must show possession by defendant as an individual:* 124 S. E., 337; 40 S. E., 99. *Court must determine whether evidence is sufficient to sustain conviction:* 43 S. E., 533; 106 S. E., 813; 92 S. E., 871; 88 S. E., 706; 120 S. E., 557.

*Mr. J. Lyles Glenn, Jr., Solicitor,* for the State, cites: *Weight of evidence:* 123 S. E., 258; 120 S. E., 359; 123 S. E., 765; 122 S. C., 493; 62 S. C., 378; 61 S. C., 22. *"Storing" defined:* 68 S. C., 169; 63 S. C., 102. *Evidence of unlawful purpose:* 120 S. C., 400.

June 26, 1925.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The following statement appears in the record:

"The above-entitled action is one in which the appellant,